The Bank of Montreal, Appellant, *v.* Carl S. Recknagel et al., Respondents.

Letters of credit are governed by the same general legal principles as are all contracts. When the right to draw is conditioned upon the performance of some act, or the existence of certain facts, it must appear that the act has been performed or the facts exist.

Every lawful provision or condition in a contract should be regarded in determining the rights of the parties thereto, if it can be deemed to have entered into the contract with any definite or perceptible purpose.

Whether a provision shall have the effect of a condition absolute depends upon the intention of the parties, to be collected from the terms of the agreement itself and from the subject-matter to which it relates. It must be a provision which cannot be severed from the contract, and leave it, within a fair interpretation, as the agreement of the parties.

Defendants requested plaintiff, a banking corporation having agencies in New York and London, to telegraph to V. & Co., at Hong Kong, authority to draw, at six months, "against consular invoice, and full set bills of lading of 2,500 bales manilla hemp, p. Robinson, at the rate of £4 p. bale." Plaintiff telegraphed in compliance with the request, and on the following day delivered to defendants a letter of credit, directed to plaintiff's agent in London, authorizing V. & Co. to draw "against goods shipped per Robinson, * * * at six months sight, for any sum or sums not exceeding £10,000 sterling, to be used as they may direct for invoice cost of 2,500 bales of manilla hemp." The letter required that the bills be drawn prior to a date specified and advice given to the agents. "Such advice to be accompanied by bills of lading, * * * with abstract of invoice indorsed thereon for the property shipped as above." On receipt of the letter of credit defendants executed an agreement consenting to its terms, and obligating themselves "to provide for all bills which shall be drawn and accepted under the same." Plaintiff's agents in London were advised of the telegraphic credit, and before the letter of credit reached V. & Co. that firm drew on said agents, and they accepted three drafts similar in form, each of which directing the amount thereof to be placed to account against a specified number of "bales of hemp." To each draft was attached a bill of lading for "bales of merchandise, * * * weight and contents unknown." On each bill of lading was indorsed by V. & Co., after it had been signed by the captain, but without his knowledge or consent, an abstract of invoice for "bales of manilla hemp." Each draft was accompanied by a letter of advice describing the shipment as "bales of hemp." The drafts were paid at maturity. On arrival of the ship "Robinson" at New York it was discovered that out of 2,020 "bales of merchandise" only 500 were bales of manilla hemp. In an action to recover the amount of plaintiff's acceptances, *held,* that plaintiff was only entitled to judgment for the amount of the draft, which was accompanied by a bill of lading for the bales which were manilla hemp; that defendants only became liable to plaintiff to provide for drafts accepted within the precise terms upon which the credit was opened; that plaintiff was not bound to accept, nor was plaintiff bound to provide for any draft, not accompanied by a bill of lading and letter of advice evidencing a consignment of manilla hemp ; and that defendants' agent, in accepting against a shipment of merchandise or of hemp generally, departed from an important condition of the credits and agreement; also, that the words "for our account" in the defendants' request referred to the drafts and not to the purchase.

*Woods* v. *Thiedemann* (1 Hurl. & Colt, 478) and *Merchants' Bank* v. *Griswold* (72 N. Y. 472) distinguished.

Also, *held,* that the letter of credit and the agreement to provide for the drafts did not alter the conditions imposed by the cable credit or change the relative obligations of the parties.

Also, *held*, as it appeared that in bales of manilla hemp the goods were not covered, the shipper could have procured bills of lading indicating the kind of hemp shipped.

(Argued April 23, 1888, decided June 5, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 9, 1885, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.   (Reported below, 20 J. & S. 334.)

This action was brought to recover the amount of three drafts drawn by Vogel & Co., of Hong Kong, upon plaintiff's agent in London, and accepted and paid by it.

The plaintiff is a Canadian banking corporation, having agencies in London and in New York city.   The defendants are a firm, doing business in the latter city, under the name of Recknagel & Co.   On December 1, 1881, the defendants requested the plaintiff's New York agents to open, by telegraph, a credit in favor of Vogel & Co., of Hong Kong, China, in the following communication in writing:

*"December* 1, 1881.

"Please telegraph authority to Vogel & Co., Hong Kong, to draw at 6 mos. for our account against consular invoice, and full set bills of lading of 2,500 bales manilla hemp, p. Robinson, at the rate of £4 p. bale on a basis of eight shillings sterling freight filled up in bill of lading, reducing advance if higher."

The same day plaintiff sent the following telegram to Vogel & Co.:

"Vogel, Hong Kong, credit 608, six months, issued Recknagel ten thousand pounds, documents; 2,500 bales manilla hemp, per Robinson, at four pounds per bale, if freight, eight shillings, or reduced advance if freight higher."

On the following day the plaintiff delivered to the defendants a letter of credit in favor of Vogel & Co., which was addressed to the plaintiff's agents in London, and which authorized Vogel & Co. to draw "against goods shipped per

'Robinson,' * * * at six months sight, for any sum or sums not exceeding £10,000 sterling, to be used as they may direct for invoice, cost of 2,500 bales of manilla hemp, * * * to be purchased for account of Recknagel & Co., of New York, or whom it may concern, and to be shipped to New York. The bills must be drawn in Hong Kong, or in some port in ———, prior to the 1st day of June, 1882, and advice given to you in original and duplicate, such advice to be accompanied by bill of lading, filled up to order of agents of the Bank of Montreal, New York, with abstract of invoice indorsed thereon, for the property shipped as above. All the bills of lading issued, except the one mailed to us and the one retained by the captain of the vessel carrying the cargo, are to be forwarded direct to you. The original invoice, properly certified, to be also forwarded to us." On the margin was written, " this credit opened by cable direct 1st December, 1·881." Upon the receipt of this letter of credit the defendants, the same day, executed an agreement consenting to its terms, obligating themselves " to provide for all bills which shall be drawn and accepted under the same," etc, and providing as to security for the payment of their indebtedness.

On December fourteenth and nineteenth the London agents were advised, by cable and by mail, of the telegraphic credit extended to Vogel & Co. Between December 3 and 13, 1881 Vogel & Co. drew three drafts on the plaintiff's London agents, all of the same being of like form to the following, which was the first one drawn, and differing only in dates and figures:

" No. 138248.  Exchange for £2,400.

"HONG KONG, *3d December*, 1881.

" At six months after sight of this first exchange (second and copy unpaid), pay to the order of ourselves two thousand four hundred pounds sterling, value received, and place the same to account against s / m. 600 bales hemp,' R. Robinson ' under tel. cr. 608. £10,000.

" Dated NEW YORK, *1st December*, 1881.

" VOGEL & CO.

"To the BANK OF MONTREAL, *London.*"

---

---

The three drafts amounted, in the aggregate, to £8,080.  The other two drafts were against 500 and 920 " bales of hemp," respectively.  To each draft was attached a bill of lading for " bales of merchandise," " weight and contents unknown," and there was indorsed by Vogel & Co. upon each bill of lading, after it had been signed by the captain, but without his knowledge or consent, an abstract of invoice for " bales of manilla hemp."  The draft was accompanied by a letter of advice, describing the shipment as " bales of hemp."  These drafts were drawn under the telegraphic credit, and had been accepted by plaintiff's London agents before Vogel & Co. had received the letter of credit mailed by defendants to them.  The drafts were paid at maturity.  Upon arrival of the ship " Robinson " in New York it was discovered that there were only 500 bales of manilla hemp on board, and the remaining 1,520 " bales of merchandise " were composed of rolls of matting.  Vogel & Co. were bankrupt and had absconded.  The plaintiff seeks to recover of the defendants for the amount of its acceptance of drafts of Vogel & Co.  It had judgment, upon the defendants' offer, for the amount of the draft, which was accompanied with the bill of lading, for the bales which actually were manilla hemp ; but, as to the other drafts, it was held below that it could not recover, as they were not accompanied with bills of lading and invoice for manilla hemp, and because the bales identified by the bills of lading were not manilla hemp.

*George De Forrest Lord* for appellant.  Both the telegram and the letter of credit, but especially the former, are mercantile, as distinguished from legal instruments, and should be construed in such manner as to carry out the intention of the parties as indicated by all the circumstances. (*Douglas* v. *Reynolds*, 7 Pet. 123 ; *Lawrence* v. *McCalmont*, 2 How. Sup. Ct. 449 ; *Drummond* v. *Prestman*, 12 Wheat. 515 ; *Gates* v. *McKee*, 13 N. Y. 235, 236 ; *Gelpcke* v. *Quentell*, 59 Barb. 264 ; *Bell* v. *Bruen*, 1 How. Sup. Ct. 169 ; *Dobbin* v. *Bradley*, 17 Wend. 442.)  Defendants must be presumed to have intended that the plaintiff should act upon

such bills of lading as it would be possible for Vogel & Co. to procure, and not that it should insist upon details which would be of no practical value. (Legget on Bills of Lading, 13 ; 1 Parsons on Shipping, 197; *Nelson* v. *Stephenson*, 5 Duer, 544, 549 ; *Lebean* v. *Gen. Steam Nav. Co.*, 42 L. J. [N S.] C. P. 1; *Jessell* v. *Bath*, 36 L. J. [N. S.] Exch. 149.) Vogel & Co.'s authority to draw rested upon the fact of their using the funds in the purchase and shipment of hemp, and their statement that they had so used them binds defendants. (*Batavia Bk.* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 199 ; *Ulster Bk.* v. *Synoth*, 5 Irish Rep. 595.) As to the genuineness of the bill of lading, the banker is entitled to depend upon the representations of the user of the credit, and the person to whom the credit is issued is bound by those representations. ( *Woods* v. *Theidemann*, 1 Hurl. & Colt. 478 ; *Ulster Bk.* v. *Synott*, 5 Irish Rep. 595.)

*Charles M. Da Costa* for respondents. When the right to draw is limited in amount, or is dependent upon condition of the performance of some act, or that certain facts exist it must appear that the draft was within the limit, or that the act constituting the condition has been performed, or the facts exist. (*Merchants' Bank* v. *Griswold*, 72 N. Y. 472, 479 ; *Germania Bank* v. *Taaks*, 101 id. 442 ; *Decatur Bank* v. *St. Louis Bank*, 21 Wall. 294.) The principal is never liable to his agent if the latter has departed from his instructions. If damage follows to the agent, by reason of such departure, the agent alone must bear it. (*Loeb* v. *Hellman*, 83 N. Y. 601 ; *Lovatt* v. *Hamilton*, 5 Mees. & W. 639 ; *Johnson* v. *Macdonald*, 9 id. 600 ; *Welsh* v. *Gossler*, 89 N. Y. 540, 545, 548 ; *Hill* v. *Blake*, 97 id. 216, 221 ; *Pope* v. *Pastor*, 102 id. 366 ; *Tobias* v. *Lissberger*, 105 id. 404 ; *Bowes* v. *Shand*, L. R., 2 App. Cas. 455, 480 ; *Cunningham* v. *Judson*, 100 N. Y. 179 ; *Norrington* v. *Wright*, 115 U. S. 188, 203 ; *Filley* v. *Pope*, id. 213, 219, 220 ; *Cleveland Rolling Mills* v. *Rhodes*, 121 id. 255, 261.) The defendants were entitled to the observance of the condition that the bill of lading should

be for manilla hemp, because it afforded them protection against any wrong-doing; if the master had issued bills of lading for manilla hemp, when other merchandise was actually shipped, and moneys were advanced on the strength of the recitals in the bills of lading, the master, as well as the ship owners, would, under the law prevailing in this State, have been liable. (*Meyer* v. *Peck*, 28 N. Y. 598; *Miller* v. *Hannibal & St. Jos. R. R. Co.* 90 id. 430; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 195; *Schooner "Freeman"* v. *Buckingham*, 18 How. [U. S.] 182; *Pollard* v. *Vinton*, 105 U. S. 7.)

GRAY, J. If Vogel & Co., in drawing upon plaintiff's London agents, complied with the terms and conditions of the cable credit, then the defendants are liable to the plaintiff; for that credit was extended in pursuance of the terms of their request. But if Vogel & Co., in any material matter, failed to comply with those terms and conditions, the plaintiff's London agents accepted the drafts at their peril, and defendants could not be held liable unless there were, in fact, consignments of Manilla hemp, or unless, by the provisions of the letter of credit and the defendants' agreement respecting the same, the terms of the preceding request and of the cable credit were modified or changed, in such wise as to allow of drafts by Vogel & Co. without such restrictions or conditions. The defendants' request was to " telegraph authority to Vogel & Co. to draw at six months for our account against consular invoice and full set bills of lading of 2,500 bales manilla hemp, per Robinson, at £4 per bale," etc., etc., and the telegram to Vogel & Co. was: " Credit 608, six months, issued Recknagel, £10,000, documents 2,500 bales manilla hemp, per 'Robinson,' at £4 per bale," etc., etc. There is no doubt that both bankers and shippers plainly understood the word " documents," used in the telegraphic credit, as calling for consular invoices and bills of lading; for the former cabled on the basis of the defendants' written request to that effect and the latter sent forward their drafts, accompanied by such

documents. The difficulty has arisen from the failure to specify in the bills of lading the kind of merchandise which the defendants had authorized the plaintiff to accept against for them, and in the acceptance of drafts which were not against shipments of that kind of merchandise at all. We do not see that the letter of credit and the agreement to provide for acceptance and to indemnify, alter the conditions imposed by the cable credit, or change the relative obligations of the parties. The letter of credit authorized Vogel & Co. to draw on plaintiff's London agents "against goods shipped per 'Robinson' for £10,000 to be used for invoice cost of 2,500 bales of manilla hemp, at £4 per bale, * * * filled up in a bill of lading," etc. It required the advice of the bills drawn "to be accompanied by bill of lading * * * with abstract of invoice indorsed thereon for the property shipped as above." The agreement of indemnity was to provide for bills " drawn and accepted" under the letter of credit.

Letters of credit are governed by the same general legal principles as are all contracts. In *Orr* v. *Union Bank of Scotland* (1 Macq. H. of L. Cases, 513) Lord BROUGHAM said of them: " I am inclined to think that there is no very great novelty or peculiarity in letters of credit to take them out of the general law applicable to mandates. I am not aware that there is anything in the mercantile law or the custom of merchants to distinguish letters of credit from any other authority to pay money." In this case the peculiarity of the credit extended by the plaintiff to Vogel & Co., at the defendants' request, is that, besides being special, in that it was addressed to a particular banking agency, was confined to it and gave no other party a right to act upon it (*Union Bank* v. *Coster*, 3 N. Y. 203), it restricted the drafts drawn under it to a particular purpose, which should be vouched for in a certain manner, to authorize acceptance and payment. Under the arrangements effected between the plaintiff and the defendants for the extension of the credit to Vogel & Co., the defendants only became liable to plaintiff to provide for drafts accepted by

its London agents, within the precise terms upon which the credit was opened. The credit was authorized upon certain conditions, prescribed by the parties to be ultimately bound; which they not only had the right to make, but which were assented to by the plaintiff.

It is difficult to see how parties could more particularly define the terms of their engagements than was done in this case. By the proper construction of the agreement between them, the plaintiff was not bound to accept any drafts unless they were against manilla hemp, shipped by Vogel & Co. to defendants, by the ship Robinson; vouched for as to each of those facts and the stipulated cost, etc., by documents, consisting of a letter of advice and a bill of lading; and the defendants were not bound to provide for or take up any other kind of drafts. Each party was held to either accept, or to provide for drafts, as the case might be, if they were accompanied by those mercantile documents evidencing the consignment of manilla hemp, in the particular manner and at the rates of cost and freight specified.

In making their arrangements with the plaintiff, the defendants had the right to surround themselves, as to their advances through the plaintiff's agency, with all the safeguards which the nature of the case admitted. The effect of their stipulating in respect of acceptances by plaintiff of Vogel & Co's drafts, was to protect themselves, as far as was possible, against any unauthorized acts of Vogel & Co. Every lawful provision or condition in the contracts of parties should control and should not be disregarded in the determination of their rights, if it can be deemed to have entered into the contract with any definite or perceptible purpose. In interpreting their agreements and in determining the respective obligations based upon their writings, courts should look at the surrounding circumstances, the situation and relations of the parties, and the subject-matter of their negotiations.

In that way the intention, where there is any uncertainty, is better given effect, and their undertaking is more certain to receive a reasonable and fair interpretation. But when the

agreement *is* determined, into which the parties have entered, it is but just and fair that they should be held strictly to it, and all their stipulations we should assume to have been made for a purpose and to have been considered important by them, and therefore cannot be dispensed with. (*Hill* v. *Blake,* 97 N. Y. 216.)

In *Germania Bank* v. *Taaks* (101 N. Y. 442) ANDREWS, J., speaking of the effect of a letter of the defendants, undertaking to accept the drafts of certain parties, said (p. 449): "Assuming that it was a general letter of credit, * * * it, nevertheless, amounted simply to a contract on the part of Taaks & Lichtenstein to pay advances made in conformity therewith. They had a right to stand upon the very terms of their contract and they were not bound unless the condition upon which their obligation depended was fulfilled."

In *Merchants' Bank* v. *Griswold* (72 N. Y. 472), CHURCH, Ch. J., said (p. 479): "It is doubtless true that when the right to draw is limited in amount, or is dependent upon the condition of the performance of some act, or that certain facts exist, it must appear that the draft was within the limit, or that the act constituting the condition has been performed, or the facts exist."

Whether a provision shall have the effect of a condition, absolute in its nature, is often a question of much difficulty. It should be obvious from a reading of the writings of the parties that it was the understanding of the parties it should have that effect. It was said by Chief Justice TINDAL, in *Glaholm* v. *Hays* (2 Man. & G. 257, 266), that the decision of the question must "depend upon the intention of the parties, to be collected, in each particular case, from the terms of the agreement itself and from the subject-matter to which it relates." I do not think it depends upon the arrangement of words in the writing, but on the reason and sense of the thing, as it can be collected from whatever constitutes the agreement sought to be enforced. That which is a condition must be some provision which cannot be severed from the agreement and leave it, within a fair interpretation, as their contract.

Applying these rules here, we find, in the transactions between these parties, a certain purpose, or object, which the defendants sought to attain and which the plaintiff undertook to carry into .effect. That purpose seems plain enough. It was to advance moneys to obtain a consignment of a certain article of merchandise, known as manilla hemp, and to secure, so far as possible, that the advance should be made upon that particular article and upon no other. When the authority to accept a draft, for which another is to be bound, depends upon conditions, reasonable in their nature and readily capable of being ascertained or performed, it seems but just that the existence or performance of such conditions should be shown in order to enforce the obligation of the party.

In this case the defendants' promise to indemnify the plaintiff was coupled with a condition which, I think, was material and important. · It was an integral part of the agreement of the parties that the bills of lading should contain a statement that manilla hemp was shipped. The defendants had agreed to advance against specific consignments of that article of hemp ; such consignments to be evidenced to the acceptors by bills of lading, in form for such a shipment. The words " for our account," in the defendants' request, refer to the drafts and not to the purchase. The purpose of making the advance was not only specified, but the authority to accept was limited to the event of the fulfillment of that purpose being evidenced in a certain way. The plaintiff's agent, in accepting against a shipment of merchandise in general, or against hemp generally, departed from an important condition of the credit and of the agreement. It accepted and paid drafts, which, on their face, purported to be drawn against " bales of hemp," and were accompanied by bills of lading, filled up for " bales of merchandise," " weight and contents unknown," and by letters of advice for " bales of hemp." No mention is made in those documents, which were the warrants for the acceptance of drafts, of the kind of hemp or merchandise. The indorsement of an abstract of the invoice was made by Vogel & Co., the shippers, and amounted merely to

their own representation. This fact appellant concedes, and also that the indorsement was made after the captain had signed and delivered the bills of lading and without his knowledge and consent. The general expression, in the drafts and bills of lading, of "hemp" or "merchandise" in no respect met the requirements of the credit. They include the article which defendants agreed to advance against, as the greater always does the less; but that was not enough, the article itself was not stated which was the subject of the arrangements entered into in providing for a financial credit. It is quite obvious that had plaintiff's agents followed the instructions of the cable credit, no loss could have happened and Vogel & Co. would not have been enabled to carry out their fraudulent scheme. It cannot be pretended that Vogel & Co. exercised any authority under the cable credit to draw upon plaintiff; for the authority therein contained was predicated upon the drafts being accompanied by full sets of bills of lading of 2,500 bales of Manilla hemp and other documents evidencing such a shipment.

In *Woods* v. *Thiedemann* (1 Hurlst. & Colt. 478), cited by the appellants, the bill of lading accompanying the draft was a forgery. It was held that the acceptors need only look to the bills of lading and that they did not take the risk of their genuineness. That, at most, would only be authority for the proposition that if Vogel & Co. had forged bills of lading as called for in the telegraphic credit, defendants would be bound as between themselves and the plaintiff.

The case of the *Merchants' Bank* v. *Griswold* (72 N. Y. 472) was unlike the present one. There the defendant had empowered his agent to draw upon him for the purchase of lumber. The writing, which he gave to that effect, was in the nature of an instruction to the agent, and parties were warranted in relying upon the agent's representations that his drafts were in the course of his principal's business. But in the present case, the defendants' agreement was simply to provide for all the acceptances by the plaintiff of drafts of a certain description, accompanied by vouchers evidencing the

application of the drafts to a specified purpose.  There was no arrangement for the advance, through the plaintiff, of moneys to Vogel & Co. to buy hemp generally, or any merchandise, in Vogel & Co's discretion as agents of defendants.

The principle is urged by the appellant that all commercial instruments are to be liberally interpreted so as to protect persons who give credit on the face of them.  (*Lawrence* v. *McCalmont*, 2 How. [U. S.] 426, 449 ;  *Gates* v. *McKee*, 13 N.Y. 235 ;  *White's Bank* v. *Myles*, 73 id. 341.)  But that principle only applies where the provisions of an agreement are ambiguous, loose or susceptible of more than one fair interpretation, and we do not think that is the case here.

We do not see the force in the argument that no other bill of lading could be demanded than was given here.  The master of a ship is the general agent of the owners to perform all things relating to the usual employment of his ship, and, among other things, to sign bills of lading for goods put on board and acknowledge the nature, quality and condition of the goods.  (1 Parsons on Contracts [5th ed.] 45.)  That was possible to be done in this case ; for a bale of manilla hemp is not covered, as the trial court found on the evidence, and the shipper might have procured a bill of lading which would have indicated the kind of hemp put on board the ship.  But, whether the master could be compelled, or not, to identify in the bill of lading the merchandise shipped as manilla hemp, that fact cannot control the disposition of this case.  The agreement of the parties called for a particular statement in the bill of lading to accompany the drafts, and that statement, or the existence of facts which would have authorized it, is a condition precedent to defendants' responsibility to respond to plaintiff's demand.

To further consider the elaborate argument of the able counsel for the appellant is unnecessary.

The views I have expressed lead to an affirmance of the judgment appealed from.

All concur.

Judgment affirmed.