[No. 19791.  Department Two.  October 25, 1926.]

BANK OF EAST ASIA, LIMITED, *Appellant, v.*
HERBERT ARCHIE PANG *et al.,*
*Respondents.*[1]

[1] BANKS AND BANKING (23)—PAYMENT OF CHECKS—EXCHANGE—
LETTERS OF CREDIT—LIABILITY.  Where a bank issues an irrevocable letter of credit, in favor of an importer to cover a shipment of goods, which was, by its terms, payable on presentation of a draft for the amount, accompanied by specified shipping documents, which draft was paid upon presentation of the documents, it cannot thereafter recover the amount from the shipper upon the ground that the goods shipped did not conform to or comply with the shipping contract between the exporter and the importer; as the bank was not involved in that contract or dealing in the commodity, but in documents only, and was bound to pay the draft in any event when accompanied by genuine documents specified in the letter of credit.

Appeal from a judgment of the superior court for King county, Hon. C. E. Claypool, judge *pro tempore,* entered September 28, 1925, dismissing an action on contract, upon sustaining a demurrer to the complaint. Affirmed.

*C. H. Winders,* for appellant.
*Rummens & Griffin,* for respondent.

MAIN, J.—The complaint in this action is based upon two drafts for the sums of twelve thousand five hundred dollars and seven thousand five hundred dollars respectively.  To the amended complaint, which will be referred to as the complaint, a demurrer was interposed and sustained.  The plaintiff declined to plead further and elected to stand upon the complaint, with the result that judgment was entered dismissing the action, from which it appeals.

[1]Reported in 249 Pac. 1060.

The facts, as stated in the complaint, essential to present the law question to be determined, may be summarized as follows: The appellant, the Bank of East Asia, Ltd., was located at Shanghai, China, and will be referred to as the bank. The Sang Lee Company was engaged in business at the same place. The respondents Herbert Archie Pang and Law Wing Woo did business under the name of Union Trading Company at Seattle, Washington. The Sang Lee Company purchased steel products from the Union Trading Company and to facilitate the matter of payment the bank issued two letters of credit, the first of which was for twelve thousand five hundred dollars and was in words and figures as follows:

"American Express Company, Seattle, Washington.
        Mr. Grimmig, Building.
        Mr. Eberle, For. Traff. Dept.
"Union Trading Company,       Aug. 9, 1923,
Seattle, Washington

        Irrevocable Export Credit.
           No. 17196
      Mention this Credit Number on all
           communications.

"Dear Sir:

"For account of our correspondent, named below, as ordered by cablegram we herewith open an IRREVOCABLE CREDIT in your favor as follows:
Amount $12,500. (Twelve thousand five hundred dollars)
Expires Sept. 30th, Draft must be presented on or before that date.
For account of Sang Lee Company
Covering shipment of Steel products.
Destination Shanghai direct.
Insurance-marine to be effected by shippers
available by draft on us at Sanglee Co., Shanghai at
90 d/a                (in dup)

accompanied by following shipping documents (in form satisfactory to us).

Complete set of steamer B/L to order Bank of East Asia, Ltd., Marine and War risk Insurance Certificates in duplicate. Notify consignee.

Invoice in triplicate.

P. S. Draft should bear the clause reading: 'Payable with interest added at 7% from date of draft until approximate date of arrival of cover in New York.'

Above Credit opened by      Yours truly,

Bank of East Asia, Ltd.,      Assistant Treasurer

    "Shanghai, China."

This letter of credit by its terms is made irrevocable and was for the purpose of covering a shipment of steel products to the Sang Lee Company. The American Express Company was the agent of the bank for the purpose of making payment. On September 5, 1923, the Union Trading Company made a shipment of steel products and drew a draft in accordance with the letter of credit, as follows:

                "Seattle,

"Exchange for $12,500.00        September 5th, 1923.

    "AT NINETY DAYS SIGHT..............of this FIRST OF EXCHANGE (SECOND UNPAID) pay to the order of BANK OF EAST ASIA, LTD., SHANGHAI, CHINA. TWELVE THOUSAND FIVE HUNDRED DOLLARS ONLY......

Value received, and charge the same to account of

Drawn under your Irrevocable Export Credit No. 17196. 'Documents against payment.' 'Payable with interest added at 9% from date of draft until approximate date of arrival of cover in New York, U. S. A.          UNION TRADING CO.,

             "By Archie Pang,

                "Manager.

"To MESSRS. SANG LEE COMPANY,

    "Shanghai,

      "China."

This draft with the documents attached was presented to the American Express Company and paid.

The draft calls for acceptance at sight and payment in ninety days. It, together with the bill of lading and invoice, was transmitted to the bank and was by it presented to the Sang Lee Company and accepted. On the due date, the latter company was unable to take up the draft and it was duly protested and demand made upon the Union Trading Company to reimburse the bank. This demand was refused and the present action followed. The second draft and the proceedings thereunder was the same as that upon the first.

[1] The bank claims, and so alleges in the complaint, that the steel products were not of the kind and quality which had been contracted for by the Sang Lee Company and that therefore it has a right, having paid the draft through its agent, to maintain an action directly against the Union Trading Company. The question is, whether the bank, having issued the letter of credit providing that payment would be made when certain documents were presented, can now rely upon the claimed fact that the steel products were of an inferior quality. The contract for these products was between Sang Lee Company and the Union Trading Company. The letter of credit was a contract between the bank and the Union Trading Company. There is no claim that the documents presented when the payment was made by the express company did not conform to the requirements of the letter of credit. The bank was dealing in documents and not merchandise. In *National City Bank v. Seattle National Bank*, 121 Wash. 476, 209 Pac. 705, 31 A. L. R. 347, the question was whether the documents presented conformed to the requirements of the letter of credit and arose between the agent of the bank issuing the letter and a bank presenting the draft and documents. In the course of the opinion in that case, the court made use of this language:

"We are not here concerned with the original contract between Sexton & Company and the importer, and need not inquire as to whether the terms of that contract were met, so as to fix the liability of the buyer. Bankers are not dealers in sugar in such a case as this, but are dealers in documents only, and whatever contract was made by the banks must be determined from the letter of credit itself. Here, as is the custom in such cases, the banker was presented with documents passed over his counter, and asked to pay a large sum of money in exchange for them. His duty was not to go out and determine by personal examination of the shipment, or by the employment of experts, whether the goods actually conformed to the contract between the buyer and seller, nor even to determine, either from his own knowledge or by expert advice, whether the documents called for goods which the buyer would be bound to accept. The banker knows only the letter of credit, which is his only authority to act, and the documents which are presented under it. If these documents conform to the terms of the letter of credit he is bound to pay. If not, he is equally bound not to pay."

In *Laudisi v. American Exchange National Bank,* 239 N. Y. 234, 146 N. E. 347, the plaintiff purchased a quantity of grapes which were to be shipped from California. As a method of paying for them, he made a contract with the defendant bank to issue to the vendor of the grapes a letter of credit under which the latter's draft for the purchase price was to be paid by the bank on presentation when accompanied by certain documents. The grapes were shipped to the plaintiff and the draft for the purchase price thereof was paid by the bank on account of the plaintiff on the presentation therewith of the documents. The plaintiff claimed, among other things, that the grapes shipped were much inferior to those which he had contracted to buy and had notified the bank that the grapes were not of the quality contracted for and requested it not to pay the

draft. The bank paid the draft and the action was brought against it by its customer on whose behalf the letter of credit was issued. It was there held that the contract between the customer and the bank under which the bank issued the irrevocable letter of credit was entirely distinct and apart from the contract between the customer and his vendor under which the goods were shipped. It was there said:

"The whole process of authorizing banks to issue letters of credit, under which the purchase price of goods is often paid for account of the vendee before he has had a chance to examine them, is largely based on confidence in the honesty of the vendor. If the vendee is suspicious of dishonesty he can guard against it by appropriate clauses in his contract. But certainly the courts ought to exercise no power of embarrassing or confusing widespread processes of commercial life by inserting in such contracts as this one clauses which it may deem in a particular case might have been quite properly placed there, but which as a matter of fact the parties were content to disregard and omit. The customer can impose and it will be the duty of the courts fairly to enforce all the restrictions and safe-guards he desires. But they should not by strained interpretation impose those which he has omitted.

"There remains one feature to be briefly considered. Before the defendant paid the draft it was notified by the plaintiff that the grapes did not comply with the requirements of the contract but were much inferior thereto, and it was notified or requested not to pay the draft. We do not think that it is very earnestly urged by the plaintiff that this fact changed the relations and rights of the parties. It did not. The contract between the customer and the bank, under which the latter issues an irrevocable letter of credit, is entirely distinct and apart from the contract between such customer and, as in this case, his vendor under which goods are to be shipped. The question between the customer and the vendor is the one whether the goods

comply with the contract, and if they do not the former
has his appropriate right of action.  The question be-
tween the customer and the bank which issues the
letter of credit is whether the documents presented with
the draft fulfil the specific requirements, and if they
do, speaking of such facts as exist in this case, the
bank has the right to pay the draft no matter what
may be the defects in the goods which have been
shipped.  The bank is not obliged to assume the bur-
dens of a controversy between the vendor and vendee
and incur the responsibility of establishing as an ex-
cuse for not paying a draft that the vendee's version
is the correct one.''

In neither of those cases is the exact question here
presented decided, but the question is decided in
*Maurice O'Meara v. National Park Bank,* 239 N. Y.
386, 146 N. E. 636. There the action was brought by
the assignor of the vendor of a large quantity of news-
print paper against the bank which had issued a letter
of credit.  The bank when the drafts and documents
called for in the letter of credit were presented refused
to pay on the ground that the paper was not of the
kind and quality which the vendee contracted for.  It
was held that the bank should pay and that it was not
concerned whether the paper was as specified in the
contract between the seller and purchaser.  It was
there said:

''The bank issued to plaintiff's assignor an irrevoc-
able letter of credit, a contract solely between the bank
and plaintiff's assignor, in and by which the bank
agreed to pay sight drafts to a certain amount on pre-
sentation to it of the documents specified in the letter
of credit.  This contract was in no way involved in or
connected with, other than the presentation of the docu-
ments, the contract for the purchase and sale of the
paper mentioned.  That was a contract between buyer
and seller, which in no way concerned the bank.  The
bank's obligation was to pay sight drafts when pre-

sented if accompanied by genuine documents specified in the letter of credit. If the paper when delivered did not correspond to what had been purchased, either in weight, kind or quality, then the purchaser had his remedy against the seller for damages. Whether the paper was what the purchaser contracted to purchase did not concern the bank and in no way affected its liability. It was under no obligation to ascertain, either by a personal examination or otherwise, whether the paper conformed to the contract between the buyer and seller. The bank was concerned only in the drafts and the documents accompanying them. This was the extent of its interest. If the drafts, when presented, were accompanied by the proper documents, then it was absolutely bound to make the payment under the letter of credit, irrespective of whether it knew, or had reason to believe, that the paper was not of the tensile strength contracted for. This view, I think, is the one generally entertained with reference to a bank's liability under an irrevocable letter of credit of the character of the one here under consideration. See Commercial Letters of Credit, 35 Harvard Law Review, 730, 734, 735, and authorities there cited; *National City Bank v. Seattle Nat. Bank,* 121 Wash. 476, 209 P. 705, 30 A. L. R. 347; *Bank of Plant City v. Canal-Commercial Trust & Savings Bank* (C. C. A.), 270 F. 477; *International Banking Corporation v. Irving Nat. Bank* (D. C.), 274 F. 122, 125, affirmed (C. C. A.) 283 F. 103; *Harper v. Hochstim,* (C. C. A.) 278 F. 102, 20 A. L. R. 1232; *E. Clemens Horst Co. v. Biddell Brothers,* (1912) App. Cas. 18, reversing (1911) 1 K. B. 934; *Brown v. Raritan Chemical Works, Inc.,* 188 App. Div. 578, 584, 177 N. Y. S. 309.

"The defendant had no right to insist that a test of the tensile strength of the paper be made before paying the drafts; nor did it even have a right to inspect the paper before payment, to determine whether it in fact corresponded to the description contained in the documents. The letter of credit did not so provide. All that the letter of credit provided was that documents be presented which described the paper shipped as of

a certain size, weight, and tensile strength. To hold otherwise is to read into the letter of credit something which is not there, and this the court ought not to do, since it would impose upon a bank a duty which in many cases would defeat the primary purpose of such letters of credit. This primary purpose is an assurance to the seller of merchandise of prompt payment against documents.

"It has never been held, so far as I am able to discover, that a bank has the right or is under an obligation to see that the description of the merchandise contained in the documents presented is correct. A provision giving it such right, or imposing such obligation, might, of course, be provided for in the letter of credit. The letter under consideration contains no such provision. If the bank had the right to determine whether the paper was of the tensile strength stated, then it might be pertinent to inquire how much of the paper must it subject to the test. If it had to make a test as to tensile strength, then it was equally obligated to measure and weigh the paper. No such thing was intended by the parties and there was no such obligation upon the bank."

The only difference between that case and the one now before us is that there the bank refused to pay and the action was brought by the assignee of the seller of the merchandise. Here, the bank paid and now seeks to recover back from the Union Trading Company, the seller of the wire products. The principle controlling the two cases is the same. It is true, that in that case there was a dissenting opinion, supported not only by the writer thereof but one other member of the court, in which the view was expressed that when the question arose between the bank issuing the letter of credit and the vendor of the product the bank had the right to allege and prove that the goods shipped were not of the kind and quality contracted for by the vendee. After mature consideration, we are of the view that the

rule of the majority opinion is the better one.  A bank, when it issues a letter of credit, has the right to write into it such requirements and conditions as it sees fit. If it does not do so and, as in this case, simply issues the letter of credit obligating itself to pay when certain documents are presented, then the terms of the contract are satisfied when documents conforming to the requirements of the letter of credit are presented.

It is alleged in the complaint in the present case that there was failure of consideration and fraud, but these allegations are based upon the fact that the products shipped were not of the kind and quality contracted for by the Sang Lee Company.  As already pointed out, this is a question which cannot be inquired into when the action is by the bank against the seller of the product or by the seller of the product against the bank.

In *Decatur Bank v. St. Louis Bank,* 88 U. S. 294, the question here presented was not discussed or decided. It was rather assumed, and the question there principally discussed was whether a letter of credit which used the term "cattle" was intended to cover shipments of hogs; in other words, whether that word was used in its general or limited sense.

Our attention is called to Rem. Comp. Stat., § 3452, [P. C. § 4132], which provides that the drawer of a negotiable instrument, if dishonored, is required to pay the amount thereof to the holder or any subsequent endorser who may be compelled to pay it, but that the drawer may insert in the instrument any express stipulation negativing or limiting his liability.  The general provision of that statute which permits the holder or any subsequent endorser of a negotiable instrument dishonored to maintain an action thereon against the drawer is not applicable in the present case, because the drafts here involved specifically state that they are

drawn under the irrevocable letter of credit and by that the bank was required to pay when a draft and other documents specified were presented.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.