CROCKER FIRST NAT. BANK OF SAN FRANCISCO (substituted for CROCKER NAT. BANK OF SAN FRANCISCO), v. DE SOUSA et al.

Circuit Court of Appeals, Ninth Circuit.
June 25, 1928.

Rehearing Denied August 20, 1928.

No. 5456.

1. Banks and banking ⬤=191—Documents accompanying drafts calling for granulated and fine sugar No. 24 held fatally defective, where letter of credit called for refined granulated and refined fine granulated sugar.

Documents accompanying drafts calling for "white Java granulated sugar No. 24" and "white Java fine sugar No. 24" *held* fatally defective, where letter of credit called for 150 tons of "white Java refined granulated sugar" and 350 tons of "white Java refined fine granulated sugar."

2. Banks and banking ⬤=191—Bank issuing letter of credit need not look beyond documents accompanying draft to ascertain whether sugar complies with sales contract.

Bank issuing letter of credit, and agreeing to accept drafts against shipment of sugar accompanied by certain documents, is not required to look beyond accompanying documents to ascertain whether sugar complied with contract of sale.

3. Contracts ⬤=346(2)—Party need not make good every defense urged against contract, or every reason assigned for nonperformance.

Party is not bound to make good every defense urged by him against contract, or every reason assigned for nonperformance, but if party maintains any one of grounds relied on, and that ground is legally sufficient, he is entitled to prevail.

Appeal from and in Error to the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Action by E. V. M. R. De Sousa and another, doing business as copartners under the firm name and style of De Sousa & Co., against the Crocker First National Bank of San Francisco, substituted for the Crocker National Bank of San Francisco. Judgment for plaintiff (23 F.[2d] 118), and defendant brings error. Reversed and remanded.

Morrison, Hohfeld, Foerster, Shuman & Clark and J. F. Shuman, all of San Francisco, Cal., for appellant and plaintiff in error.

T. T. C. Gregory and C. J. Goodell, both of San Francisco, Cal., and Frank V. Cornish, of Berkeley, Cal., for appellees and defendants in error.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

RUDKIN, Circuit Judge. Early in May, 1920, De Sousa & Co., a copartnership, as vendors, entered into a contract with Hind, Rolph & Co., a copartnership, as purchasers, for the sale of 500 tons of sugar. On May 20, 1920, in compliance with the contract of sale, the purchasers procured from the Crocker National Bank of San Francisco a letter of credit in the sum of $208,000 in favor of the vendors, in which the bank agreed that it would accept upon presentation, and pay in 60 days, drafts not to exceed $208,000 against a shipment of 500 tons, net, *white Java refined granulated sugar*, 97/98° polarization, at 20½ cents per pound, gross shipped weight, c. i. f. San Francisco; shipment from Hongkong during May/June, 1920, accompanied by full sets of invoices, consular invoices, marine and war risk insurance certificates, surveyor's certificate of quality, weight certificate, and negotiable ocean bills of lading made out to order of shipper and indorsed in blank. Later, on May 29, 1920, the letter of credit was amended so as to cover 500 tons of sugar as follows: 150 tons *granulated*, 350 tons *fine granulated*. Early in July, 1920, drafts were presented to the bank for acceptance, accompanied by commercial invoice, consular invoices, marine and war risks insurance certificate, surveyor's certificates of quality, weight certificates, certificates of polarization, and bills of lading, but acceptance was refused on the ground that the documents accompanying the drafts were not in order. The present action was thereupon commenced by De Sousa & Co. against the Crocker First National Bank of San Francisco, as successor to the Crocker National Bank, to recover the amount of the drafts, less the net proceeds derived from the sale of the sugar. A judgment in favor of the plaintiff (23 F. [2d] 118) is now before us for review.

In the court below there was apparently some controversy between the parties as to the description of the sugar called for by the letter of credit in the light of the amendment of May 29, but it seems to be now conceded that the amendment made no change in the description of the smaller lot of 150 tons and simply added the word "fine" before the word "granulated" as to the larger lot of 350 tons, so that the description in the letter of credit as amended read: 150 tons *white Java refined granulated sugar* and 350 tons *white Java refined fine granulated sugar*.

[1] In an early stage of the case the plaintiff in error likewise contended that it was under no legal obligation to accept or pay the drafts unless each and every of the documents accompanying them described the sugar word for word as the same was de-

scribed in the letter of credit as amended. But it seems to have receded from that extreme position, and now apparently concedes that it is perhaps sufficient if what it terms the essential documents so describe the sugar, and that the essential documents are the consular invoices, certificates of quality, and certificates of polarization. We think this latter view is the correct one, because it is hardly to be expected that ordinary insurance certificates, bills of lading, and certificates of weight will describe a commodity with greater particularity than is required by the nature of the documents and the purpose for which they are executed. And, without expressing any opinion as to the particular documents that must describe the commodity with precision, we will confine ourselves to the consular invoices and the certificates of quality, because in these the most complete description is found. The consular invoices described the smaller lot as "white Java granulated sugar No. 24," and the other lot as "white Java fine sugar No. 24," and the certificates of quality describe the two lots in the same words. It will thus be seen that the descriptive word "refined" is omitted from the description of the smaller lot, and the descriptive words "refined" and "granulated" from the description of the larger lot and that the figures "No. 24" are added to the description of both lots.

There was considerable discussion on the argument as to the rule of construction applicable to contracts of this kind. In Wells Fargo Nevada Nat. Bank of San Francisco v. Corn Exchange Nat. Bank (C. C. A.) 23 F.(2d) 1, the court said:

"Letters of credit in large numbers for vast· sums are used in oversea commercial transactions by people whose laws, language, and customs are often different from those of the people where the letter is issued. The safety of the issuing bank, of the buyer for whose account it is issued, and of the seller who often expends much and risks much on the faith of the promise in the letter, require that the terms of the letter shall be sharply defined and strictly complied with in all respects."

We think this view is in harmony with the decisions of the Supreme Court. Thus, in Harrison v. Fortlage, 161 U. S. 57–63, 16 S. Ct. 488, 489 (40 L. Ed. 616), it is said:

"The court is not at liberty, either to disregard words used by the parties, descriptive of the subject-matter, or of any material incident, or to insert words which the parties have not made use of."

And in the recent case of Lamborn v.

National Bank of Commerce, 48 S. Ct. 378, 72 L. Ed. ——, decided April 9, 1928, the same court said:

"The defendant is obviously not liable, unless there was a tender of sugar which met the requirements of the letter of credit as to amount and quality of the sugar, as to the time (Norrington v. Wright, 115 U. S. 188, 6 S. Ct. 12, 29 L. Ed. 366), and the place (Filley v. Pope, 115 U. S. 213, 6 S. Ct. 19, 29 L. Ed. 372) of shipment; and as to the manner of shipment and the ultimate destination."

See, also, Moss v. Old Colony Trust Co., 246 Mass. 139, 140 N. E. 803; G. Jaris Co. v. Banque D'Athenes et al., 246 Mass. 546, 141 N. E. 576; Banco Nacional Ultramarino v. First Nat'l Bank of Boston (D. C.) 289 F. 169–175; Lamborn v. Lake Shore Bank & Trust Co., 196 App. Div. 504, 188 N. Y. S. 162, affirmed under same title in 231 N. Y. 616, 132 N. E. 911; Camp v. Corn Exchange Nat. Bank, 285 Pa. 337, 132 A. 189; Old Colony Trust Co. v. Lawyers' Title & Trust Co. (C. C. A.) 297 F. 152.

As thus construed, we think the documents accompanying the drafts were fatally defective. Thus, in National City Bank v. Seattle National Bank, 121 Wash. 476, 209 P. 705, 30 A. L. R. 347, the letter of credit called for "standard white granulated sugar" while the documents described the commodity as "granulated white sugar Java No. 24," and the court held that the variance was fatal. In Banco Nacional Ultramarino v. First Nat. Bank of Boston, supra, the letter of credit called for "Brazil white crystal sugar," but the sugar was described in some of the documents as "white crystal sugar," and again the variance was held fatal. In bank of Italy v. Merchants' Nat. Bank, 236 N. Y. 106, 140 N. E. 211, the Merchants' National Bank guaranteed the payment of the purchase price of two carloads of dried grapes upon presentation of the original bill of lading. The bill of lading described the commodity as raisins, and the court held there could be no recovery. In Lamborn v. Lake Shore Bank & Trust Co., supra, the letter of credit described "Java white granulated sugar," while the bill of lading described it as "Java white sugar," and the variance was held fatal. As already stated, this case was affirmed on appeal. See, also, International Banking Corporation v. Irving National Bank (D. C.) 274 F. 122; Brown v. Ambler, 66 Md. 391, 7 A. 903.

It is perhaps unnecessary to consider the significance of "No. 24," added to the description of each lot of sugar. The appellee

contends that these numerals refer to the Dutch standard, that No. 24 is one of 18 different shades, ranging from No. 8 to No. 25, that the numerals refer to the color of the sugar, and that the court must take judicial cognizance of their meaning, because the Dutch standard of colors was used by the government for many years prior to 1913 as the principal basis for computing duties on imported sugar. How far the judicial knowledge of the court should properly be extended we need not inquire, because private individuals are not chargeable with notice of laws long since repealed, which in no wise affect their rights, and we think it can safely be said that the significance of such figures when applied to sugar is not generally or commonly known. Such knowledge is confined largely to those engaged in the sugar trade, and it is at least questionable whether it extends to those engaged in the banking business. But if it be conceded that the bank was chargeable with knowledge of the Dutch standard, and that the figures have the significance now attributed to them, the question would still remain whether the sugar described in the letter of credit was in fact No. 24 Dutch standard.

[2] It is agreed on all sides that the bank was a purchaser of documents, not of sugar, and that it had no concern with the contract of sale between the vendors and the purchasers, or with the performance of that contract. See cases above cited. For this reason the bank was not required to look beyond the accompanying documents, to ascertain whether the sugar complied with the contract of sale. If the accompanying documents satisfied the call of the letter of credit, it was the duty of the bank to accept and pay the drafts; but, if they did not, it was its right and duty to refuse acceptance or payment. The motives or the reasons which prompted the refusal are not involved in the case, and for that reason much of the testimony admitted at the trial and some of the arguments advanced in the briefs have no bearing upon the question at issue.

[3] Again, the appellee contends that the appellant took the position at the outstart that each and every document must describe the sugar word for word and term for term as described in the letter of credit, that its position in that regard was untenable, and for that reason alone the appellee was entitled to judgment. No doubt, if a person refuses to perform a contract on a specific ground or for a specific reason, he will not generally be permitted to defend on another and different ground; but it has never been held, so far as we are advised, that a party is bound to make good every defense urged by him against a contract, or every reason assigned for nonperformance. In practice it is not uncommon to refuse performance on different grounds, some of which are untenable; but if the party maintains any one of the grounds, and that ground is legally sufficient, he is entitled to prevail. In view of the conclusion reached on the merits of the case, it becomes unnecessary to consider assignments of error based on the admission of testimony.

Upon full consideration of the record we are of opinion that the court below erred in denying the request to find for the defendant below, the appellant here, and for that error the judgment is reversed, and the cause is remanded for a new trial.