### INTERNATIONAL BANKING CORPORATION v. IRVING NAT. BANK.

(District Court, S. D. New York. May 10, 1921.)

1. **Banks and banking ⊂⊃191—Only reason assigned for refusal to pay draft against letter of credit can be considered.**

   In an action against a bank, which refused to pay a draft drawn against a letter of credit issued by it, only the reason given by the bank for its refusal to pay can be considered.

2. **Banks and banking ⊂⊃191—Omission from draft of specification required by letter of credit held to justify refusal of draft.**

   Where the letter of credit issued by a bank required the draft to be accompanied by commercial documents showing that the silk was to conform to their design and the stripe was not to exceed 50 per cent. of the width of the material, the omission from the documents presented of the required statement concerning the width of the stripe justifies the bank's refusal to pay the draft, since it cannot be required to determine whether such omission has any commercial significance, nor to construe the documents nor decide arguable questions.

At Law. Two actions by the International Banking Corporation against the Irving National Bank, tried together to the court after a jury was waived. Judgment rendered for defendant.

Shearman & Sterling, of New York City (Clifton P. Williamson and James A. Stevenson, Jr., both of New York City, of counsel), for plaintiff.

Dennis & Buhler, of New York City (Joseph S. Buhler and Arthur B. King, both of New York City, of counsel), for defendant.

MAYER, District Judge. These are two actions, which were tried together and which involve the same question. While there is some difference in detail as to amount involved, there is no difference in the controverted question. A discussion of the first action will suffice for both.

The first action is to recover $22,751.30, with interest from May 18, 1920, upon a draft drawn by one K. Kobayashi, of Yokohama, Japan, upon the Irving Trust Company of New York, under a letter of credit for $32,500 issued by Irving Trust Company under date of November 7, 1919. After this letter of credit was issued, the Irving Trust Company became a national bank and was then merged with defendant, which assumed the liabilities of Irving Trust Company.

The letter of credit was issued and delivered to one Philip Liberman on November 7, 1919, and was in the following form:

"Irving Trust Company.

"New York, Nov. 7, 1919.
"Letter of Credit No. 2110 for $32,500, U. S. C'y.

"We hereby authorize K. Kobayashi, Yokohama, Japan, to draw on Irving Trust Company, New York, for account of Philip Liberman, New York, at four months after sight for any sum or sums not exceeding in the aggregate thirty-two thousand five hundred dollars U. S. currency, against complete negotiable set of shipping documents covering 500 pcs. Fuji silk as per sample 400 weight about 16 mm. each piece 33"x50 yds. to be made as per our designs and total width of stripes not more than 50% of the material width. Price $65.00 U. S. gold per piece c. i. f. New York for shipment to New York. Marine insurance and also war risk insurance to be effected by shippers. Drafts under this credit are to be drawn in duplicate and negotiated on or before May 20, 1920, and to be enfaced, 'against I. T. Co.'s L/c 2110, dated New York, November 7, 1919' and the amounts thereof to be written off on the back of this credit. The negotiating banker must send duplicate advice of such drawings promptly to Irving Trust Company, New York, accompanied by negotiable bills of lading (all except one of the set issued), insurance certificates if the shipper insures, consular invoice, and commercial invoice. Bills of lading are to be issued to the order of Irving Trust Company, New York, notify Philip Liberman, New York.' All remaining documents, completing the sets originally issued, must be sent by negotiating bankers to Irving Trust Company, N. Y., bona fide holders of drafts drawn under and in compliance with the terms of this credit that the same shall be duly accepted upon presentation and paid at maturity.        Irving Trust Company."

On April 15, 1920, Kobayashi drew the draft in question "under and pursuant to said letter of credit against a complete set of shipping documents." The draft is in the following form:

"Drawn under L/credit No. 2110 dated 7 November, 1919.  No. 5881 U. S. $22,750.

"Yokohama, 15th April, 1920.
"At four months after sight of this first of exchange (second of the same tenor and date unpaid) pay to the order of the International Banking Corporation U. S. dollars twenty-two thousand seven hundred and fifty, for value received, and place the same to account against shipment of silk goods per S. S. Asia, to New York, N. Y.
"To Messrs. Irving Trust Co. New York, N. Y., U. S. A.        K. Kobayashi.
"For a/c of Mr. Philip Liberman, New York.'

On April 15, the day of the date of the draft, it was delivered to plaintiff, together with the complete set of shipping documents referred to above, the draft bearing upon its face the words and figures "Drawn under L/credit No. 2110, dated 7 November, 1919," and the documents, consisting of commercial invoice, consular invoice, bills of lading, marine and war risk insurance policy. The bills of lading were issued

to the order of "Irving Trust Co., New York, N. Y., notify Mr. Philip Liberman, New York, N. Y." Thereafter plaintiff promptly sent to the Irving Trust Company a duplicate advice of the drawing of said draft accompanied by the negotiable bills of lading, insurance certificate, consular invoice, and commercial invoice.

On May 18, 1920, the draft was presented to the defendant for acceptance, but the defendant declined to accept the draft; the sole reason given therefor being:

"Invoice does not state that stripes not more than 50 per cent. of material width is called for in credit."

Thereupon the draft was duly protested for nonacceptance, due notice being given to defendant.

The sole question to be determined is as to whether the draft and shipping documents complied with the terms of the letter of credit. The defendant claims, inter alia, that they did not, because there is no specific statement in words and figures upon the face of the documents, "Total width of stripes not more than 50 per cent. of the material width." The plaintiff claims (1) that this is an immaterial omission; and (2) that the documents do in fact cover this representation.

[1] As the only reason for declining to pay the draft is that set forth supra, that reason alone will be considered. Grimwood v. Munson, 273 Fed. 166 (Circuit Court of Appeals for the Second Circuit, decided May 4, 1921).

[2] It will be noted that the letter of credit provided, inter alia, the silk is "to be made as per our designs and total width of stripes not more than 50 per cent. of the material width." It is agreed that "our" must have meant Liberman's, and not the Irving Trust Company's, designs. This, it may be observed in passing, is one of those obvious accidents of language which renders a mere verbal change unimportant, and hence immaterial, and does not require exact and literal verbal compliance.

The contention of plaintiff is that the control of the designs was with the buyer—i. e., Liberman—but that this was not an absolute control, because, by the addition of the words "and total width of stripes not more than 50 per cent. of the material width" the manufacturer, if such Kobayashi (or somebody else) was, could not be compelled to produce silk 33 inches wide, with stripes which occupied more than 50 per cent. of that width. In other words, Kobayashi undertook to manufacture according to Liberman's designs, provided these designs were not of such a character that the stripes would occupy more than 50 per cent. of the material width. Then follows an argument to sustain this contention, and the argument necessarily involves inference, construction of the meaning of the words concerning the 50 per cent. as applying to the manufacturer and the buyer in their relations with each other and what may be concluded therefrom.

It is argued by defendant that Liberman may well have required the letter of credit to contain the words in question because, no matter what his designs were, he wished to make certain that not more than 50 per cent. of the material should be in color, and that this may well have

been a trade necessity for his purposes. The court is then asked by plaintiff to decide that designs would include the disposition of stripes, while defendant argues much about the difference between patterns and designs. There is nothing in the words used to enlighten a reader of the letter of credit as to whether designs would or would not include the per cent. of material used for stripes.

The simplest words of art in commercial transactions often have a trade meaning. A yard may mean a yard and an eighth in one business and a yard exactly in another. Design may mean one thing in silk and another in cotton. Therefore, when the letter of credit used the phrase conjunctively, it was as if to say:

"This silk must be made as per my [Liberman's] designs, *and* the total width of stripes must be not more than 50 per cent. of the material width."

The mere statement of the arguments pro and con destroys plaintiff's case. When the bank issued this letter of credit it did not purchase goods. It agreed to purchase documents, in the sense that it would pay on receipt of certain documents, which should conform in every respect with the requirements of the letter of credit. It was, of course, not concerned with the goods, but with the documents. It would gravely impair the business of issuing letters of credit, if banks were required to construe the documents involved and determine arguable questions.

Of course, there are cases where simple and obvious verbal errors are made, such as "our" above illustrated, of which advantage cannot be taken; but here is a real difference of opinion, which is not a matter of mere words. The only safe rule for a bank is to refuse to pay, if, by omitting, as here, a distinct and clearly expressed provision, the documents do not conform with the letter of credit. Bank of Montreal v. Recknagel, 109 N. Y. 482, 17 N. E. 217.

Defendant, therefore, may have judgment on the merits in both cases.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes