## EDWARD MAURER CO., Inc., v. TUBELESS TIRE CO.

(Circuit Court of Appeals, Sixth Circuit. December 15, 1922.)

No. 3659.

1. Sales ⬦⟶85(2)—Government regulations preventing performance held to terminate contract and not to extend time for delivery.

Where contracts for sale of rubber to a manufacturer in war time were made subject to all rules and regulations imposed by the United States government, which regulations were anticipated by both parties and were in fact made during the same month, and prevented delivery of all but a small and inconsequential part of the rubber at the times stipulated, the effect was to terminate the contracts, and not merely to postpone delivery, and the seller was not entitled to make delivery thereunder after close of the war and removal of the restrictions, and after the price of rubber had greatly declined.

2. Sales ⬦⟶85(2)—Government regulations preventing performance held to terminate contract and not to extend time for delivery.

Where by reason of such regulations the seller was in default for failure to deliver several monthly installments due under the contracts, and necessary to keep the buyer's factory in operation, it could not be required to thereafter accept delivery of a lump quantity to apply on such past-due installments.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by the Edward Maurer Company, Inc., against the Tubeless Tire Company. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 272 Fed. 990.

Willis Bacon, of Akron, Ohio (Burch, Bacon & Denlinger, and Jesse P. Dice, all of Akron, Ohio, on the brief), for plaintiff in error.

Clan Crawford, of Cleveland, Ohio (Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The Edward Maurer Company, Inc., brought action in the District Court against the Tubeless Tire Company to recover damages for breach of two contracts. By the first of these contracts, dated "New York, May 3, 1918," the plaintiff agreed to sell and the defendant agreed to buy 40 tons of rubber at 62 cents a pound, "delivery and or arrival here in equal monthly quantities May, June, July, August, September, October, November, December, 1918." It also expressly provided that this contract would be subject to all rules and regulations imposed by the United States government.

------
⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

By the terms of the second contract, dated "New York, May 14, 1918," the plaintiff agreed to sell and the defendant agreed to buy 5 tons of rubber at 60 cents per pound, to be delivered in June and July, 1918, shipment from the Far East at seller's option. This contract also provided that it would be subject to all rules and regulations imposed by the United States government and that buyer would furnish seller with manufacturing import license. The last paragraph of this contract reads as follows:

"Subject to granting of import licenses by the United States government."

[1] The parties, in writing, waived a trial by jury, and the court found upon the issue joined for the defendant, and dismissed the plaintiff's petition, with costs. The court also made special findings of fact, from which findings it appears that at the time of the making of the first contract the parties contemplated that the United States government, then at war with the central powers of Europe, would make and promulgate regulations restricting the importation and use of rubber for private purposes. On May 7, 1918, four days after the date of this contract, such regulations were made and promulgated, prohibiting the importation of any new rubber for delivery to private customers, unless such customer obtained an allocation certificate from the War Industries Board authorizing the purchase and use of the same. It further appears that the defendant was unable to obtain an allocation certificate for the importation and use of rubber in excess of 180 pounds per month. These regulations, however, did not extend to or include rubber then in the United States, or on the high seas en route to the United States, which rubber was left free for sale and delivery. These restrictions were removed December 13, 1918, but, because there were no available steamers, the plaintiff was unable to obtain shipment of rubber from foreign ports until January of 1919, which shipments did not arrive in New York until the end of March or the 1st of April, 1919. The second contract was made after the government regulations were promulgated, but before the defendant had applied for an allocation certificate.

On May 23, 1918, the plaintiff delivered to the defendant upon the first contract 4,505 pounds of rubber, and on July 11, 1918, 14,048½ pounds, which shipments were accepted and paid for by the defendant. On September 27, 1918, the plaintiff made a further shipment on the first contract of 11,204 pounds of free rubber, which was on the high seas en route to this country at the time the government regulations were promulgated. This shipment the defendant refused to accept, and the same was returned to plaintiff. The plaintiff made no further shipments or tender of delivery upon the first contract in 1918, and no shipment or tender of delivery of any part of the rubber covered by the second contract either in June or July, 1918, nor at any time within that year, but late in March or early in April, 1919, tendered delivery to the defendant of 68,047 pounds in bulk, being the balance in full of all rubber covered by both contracts. This tender was refused by the defendant. It further appears that at the time this tender was made the price of rubber of the kind and quality to be furnished under these contracts was, at the place of delivery (New York),

from 39 to 40 cents per pound and this price continued substantially the same from March until August 20, 1919.

It is insisted upon the part of the plaintiff in error that the government regulations and restrictions in reference to the importation, sale, and use of rubber merely operated to postpone performance, and did not have the effect of releasing either party from full performance after these restrictions were removed. It is wholly unimportant, for the purposes of this case, to consider or determine the effect of such war regulation upon contracts made before such regulations were in force or anticipated by the contracting parties. This record presents no such question. The trial court specifically found that the first of these contracts was made at a time when both parties expected that such regulations would shortly be made and promulgated. The second contract was made after these war regulations and restrictions were in force. It is clear, therefore, that both parties contemplated performance of these contracts, not at some later date, but during the time these war regulations were in force, subject to whatever restrictions might be imposed thereby. The second contract expressly provides that it is "subject to granting of import license by the United States government."

The claim that these war regulations in force at the time this particular contract was written would operate merely to suspend performance, until the time when no import license would be required, wholly overlooks this pertinent and important provision of this second contract. Under the existing conditions and with full knowledge thereof by both parties, a provision was written into these contracts providing for the shipment of a definite quantity of rubber, evidently sufficient for factory needs, at definite dates; but the contracts themselves evidence the fact that the contracting parties fully understood and agreed that the quantity of each shipment of rubber named in the contract might possibly be restricted by government regulations to a lesser amount than the amount named in the contract. Of course, they did not contemplate that such restrictions would reduce the possible shipments each month to the trifling amount of 180 pounds; but they did contemplate that there might be a substantial reduction in the amounts named, and if the restriction imposed had permitted the shipment of a substantial quantity, commensurate in any degree with the amount in contemplation of the parties, the plaintiff would have been obliged by these contracts to ship that amount and the defendant would have been required to accept and pay for the same. Perhaps it might be said that the plaintiff was required to ship the 180 pounds each month, and the defendant was required to accept and pay for the same; but that amount is so wholly unimportant and so far short of factory requirements that it virtually amounts to a refusal to permit importation and sale by plaintiff to the defendant of any rubber under these contracts. That the parties to this contract so considered it is evidenced by the fact that neither is insisting that the other was guilty of any breach of contract for the failure on the part of plaintiff to deliver or tender delivery, or the refusal on the part of defendant to accept and pay for 180 pounds of rubber per month.

From the facts found by the trial court, as well as from the contracts themselves, it clearly appears that the defendant, with full knowledge and understanding on the part of the plaintiff, was intending and attempting to buy sufficient rubber for delivery at special times to meet its factory requirements, in war times and at war prices, and was not intending to contract for a large amount of rubber in gross, to be delivered after the war and after war regulations, to which these contracts were necessarily made subject, had ceased to operate. At the time these contracts were written no one could prophesy the end of the war. It was then generally believed that the war might last for several years. At that time the War Department of our government was expending much money and effort in anticipation and preparation for a long drawn out struggle between the contending armies. No sane business man would at that time have entered into a contract to buy, at war prices, material to supply the needs of his factory, to be delivered at specified periods in the immediate future, with the express agreement and understanding that if government regulations prevented the delivery of the material so purchased at the times named, or at any time during the continuance of the war, that the seller would have the right to deliver that material at one time and in one mass after the war had terminated, which event might be years in the future. ·

This consideration becomes important in view of the rule that contracts must be construed, where the language used will permit, in accordance with the intention of the contracting parties at the time the contract was executed. There is, as a matter of fact, no ambiguity in the language used in either of these contracts, and a court would not be justified in forcing a construction of this language that would be entirely at war with the evident purpose and intent of the contracting parties, thereby imposing an obligation upon either or both that neither in the exercise of common business judgment and prudence would have voluntarily assumed. We are therefore of the opinion that these contracts, made during the progress of the war, the first one anticipating government regulations that were promulgated four days later, and the second one made after these regulations were promulgated, contemplated deliveries during the war in the quantities named in the contract, or in such lesser quantities as government restrictions might impose.

[2] It is insisted, however, that, regardless of the effect of the war regulations upon these contracts, the defendant was required to accept and pay for the shipment made in September that reached its factory about the 17th of October, 1918, or at least was rejected upon that date, for the reasons: First, that this was free rubber, and not subject to war regulations; second, that under the rules and regulations of the Rubber Association of America, Inc., subject to which regulations both of these contracts were made, the monthly deliveries therein provided for are to be treated as separate contracts; third, that this shipment was a tender of the July installment delayed by causes beyond the seller's control. While the court in its opinion does state that this September shipment was free rubber, nevertheless there was no such finding made by the court, but, on the contrary, it found that:

(25) "Plaintiff could not obtain rubber to be delivered under either of these contracts except by importation."

If it were conceded that this was free rubber, either in the United States or en route to the United States, when the contracts were made, and that defendant then had the right to purchase and use it in its factories, nevertheless, long before delivery of this shipment was tendered, the government had refused to permit the plaintiff to import and sell to the defendant any rubber on either or both of these contracts in excess of 180 pounds per month. In our opinion that was the virtual end of these contracts, and the defendant could not be expected, nor would it have been possible for it, without the raw material, to keep its factory open and in operation, so as to be in position to accept delivery of whatever free rubber that might occasionally be obtained by plaintiff long after the parties knew that the contracts could not be performed within the intent and purpose of the contracting parties.

Aside from this consideration, the petition of plaintiff is framed in accordance with its claims that the government regulations merely postponed performance until after the termination of the war, and, notwithstanding there is an averment therein that the defendant refused to accept and pay for the September shipment, the plaintiff bases its right of action upon the final refusal of the defendant to accept and pay for all rubber, including the amount of the September shipment, tendered by plaintiff to the defendant after government regulations were removed, and asks for damages as of that date, which the court specifically found was June 26, 1919. But, even if plaintiff had relied upon this tender and refusal to accept in September as a separate breach of the contract by defendant, for which it was entitled to recover damages as of that date, under the special facts and circumstances of this case we are not disposed to disturb the conclusion reached by the trial court, evidenced by its judgment on the facts found by it, that the defendant was justified in refusing to accept this shipment tendered late in September or early in October, 1918, regardless of whether it should be considered the delayed July installment, or, under the rules of the Rubber Association of America, Inc., a tender of the September or October delivery.

For the reasons above stated, the judgment of the District Court is affirmed.