**KUNGLIG JARNVAGSSTYRELSEN v. NATIONAL CITY BANK OF NEW YORK et al.**

Circuit Court of Appeals, Second Circuit.
June 6, 1927.

No. 329.

1. **Banks and banking ☞191—Because of absence of privity, buyer from one who had had letter of credit issued for payment of same article could not maintain action for money received against the bank, paying contrary to instructions.**

Plaintiff, buyer of coal from B., who had contract for purchase thereof and through a Swedish bank had had letter of credit issued by defendant bank on account of B. for payment thereof, could not maintain action for money had and received, though, unknown to defendant, plaintiff advanced the money to the Swedish bank for payment on B.'s purchase of the coal, even if payment by defendant to the one from whom B. bought, and to whom the letter of credit was issued, was not in accordance with instructions; the letter of credit being a distinct contract from the underlying contracts of sale, and there being no privity between plaintiff and defendant.

2. **Sales ☞179(1)—Buyer under c. i. f. contract, having accepted documents furnished by seller, on which he was paid by bank, and given notice of affirmance, cannot thereafter claim it did not receive proper documents, and on that theory recover of seller as for money had and received.**

Where buyer under c. i. f. contract accepted unconditionally the documents furnished by seller, on which he was paid by bank, and gave notice of affirmance of the transaction to the bank, buyer cannot thereafter claim that it did not receive the proper documents on which seller was to be paid, because among the papers was a brokers' certificate of insurance, instead of an insurance policy, and on that ground recover of the seller as for money had and received.

3. **Principal and agent ☞163(1)—For affirmance of agent's contract, with consequent liability, it is enough that principal intentionally does acts constituting affirmance.**

Principal, intentionally doing acts which constitute affirmance of agent's contract, assumes liability, even if not intending to do so; actual willingness to assume consequences of the affirmance being unnecessary.

4. **Sales ☞85(2)—Under contract of sale of coal, seller held entitled to deliver the limited amount per month for the part of six months after the raising of government embargo remaining after withdrawal of railroad service order against shipment.**

Under contract for sale of 150,000 tons of coal for shipment to foreign country, providing that shipments on this contract are to begin within 30 days after raising of government embargo, and to be completed within six months thereafter, they to be subject to strikes and government restrictions, and to be approximately 30,000 tons per month; embargo being lifted May 1, but a railroad service order forbidding shipments on account of strike being thereafter issued, and not withdrawn, September 17, seller was entitled thereafter to deliver 30,000 tons in September and that amount in October, but no more then or later.

5. **Sales ☞89—Contract for sale of coal of specific kind held not changed as to subsequent shipments by shipment, in emergency and on permission, of other kind.**

Contract for sale and shipment of coal of a certain specified kind is not changed as to subsequent shipments by a shipment on one occasion, in an emergency and on permission obtained by cable, of a different kind.

In Error to the District Court of the United States for the Southern District of New York.

These are cross-writs of error, one by the plaintiff, Kunglig Jarnvagsstyrelsen, and the other by Dexter & Carpenter, Inc., one of the defendants, to review a judgment below in favor of the defendants and against Dexter & Carpenter, Inc., on its counterclaim to the plaintiff's complaint. The suit was brought by the plaintiff against the defendants for money had and received. The defendant Dexter & Carpenter, Inc., filed a counterclaim, alleging a breach of contract for the sale of coal. The court directed a verdict in favor of the defendants, and the jury found a verdict in favor of the plaintiff on defendant's counterclaim. Judgment affirmed on plaintiff's writ; reversed on defendant's writ.

See, also, 299 F. 991; 300 F. 891.

Before MANTON and SWAN, Circuit Judges, and CAMPBELL, District Judge.

Gustav Lange, Jr., of New York City, for plaintiff.

Shearman & Sterling, of New York City (Carl A. Mead and Wm. Harvey Reeves, both of New York City, of counsel), for National City Bank of New York.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight and Wharton Poor, both of New York City, of counsel), for Dexter & Carpenter, Inc.

MANTON, Circuit Judge (after stating the facts as above). We shall refer to the parties herein as below. The plaintiff, in its amended complaint, alleged that the defendant Dexter & Carpenter, Inc., sold to G. & L. Beijer Import & Export Aktiebolag, a Swedish corporation, 3,577 gross tons of coal c. i. f. Malmo, Sweden, at a price of $114,106.30, payment against delivery in New York of shipping documents, including insurance policies, bill of lading, and invoices. It alleged

that the coal was sold by Beijer to the plaintiff at an advance in price; that the open letter of credit in favor of Dexter & Carpenter, Inc., for the purchase of the coal, was issued payable against a bill of lading, invoice, and policy of insurance for invoice price, plus 10 per cent.; that the money was transmitted by the Aktiebolaget Gotenbörgs Bank of Sweden to the National City Bank; that the National City Bank paid Dexter & Carpenter, Inc., the money on May 8, 1920, contrary to the agreement, against a certificate of insurance brokers that they had insured the coal with London underwriters in the sum of $125,500. It alleged the coal was loaded on the steamship Alderman and had become a total loss, and the plaintiff had not received payment for the loss; that no insurance had been taken out on the coal by the brokers when they issued a certificate of insurance. At the trial, an amendment was made in the amount of damages demanded, and the action was transformed from one in affirmance of and breach of the contract pleaded into one of money had and received. No allegation was made of rescission of the contract, nor of restitution of consideration received thereunder.

The record discloses that on December 4, 1919, Beijer made a contract with Dexter & Carpenter, Inc., for the purchase c. i. f. of 150,000 tons of coal. On January 17, 1920, they contracted to sell the same amount of coal to the plaintiff at a profit. The contract called for Fairmont ¾ screen steam coal known as pool No. 33, to be shipped to Gothenburg, Malmo, and Stockholm. The prices vary with each port, but all were to be c. i. f. contracts. There was a provision that "shipments on this contract are to begin within 30 days after the raising of government embargo on export coal" and to be completed within 6 months thereafter. They were to be subject to strikes and government restrictions and at approximately 30,000 tons per month on the following terms:

"Deliveries on this contract are subject to strikes at the mines and on the railroads and to all government restrictions and regulations, and the c. i. f. price is to be increased or decreased as the railroad rates of freight from the mines to tidewater may be increased or decreased during the life of the contract, and is also subject to increase or decrease as the mining rate may be increased or decreased over that existing to-day."

Payments were to be "cash against documents, New York." Certain shipments were made under the contract.

[1] In considering the plaintiff's claim to right of recovery, we are concerned with the shipment on the steamship Alderman made on May 12, 1920. It was on this shipment that the letter of credit was issued and money paid. The Alderman met with injury as she was about to sail and remained in port of Philadelphia for repairs. While there, she caught fire from spontaneous combustion of the coal, and it was damaged and what remained was sold in November, 1920. The proceeds of this sale were never received by the plaintiff. The letter of credit of the bank issued on this shipment was dated May 10, 1920, and provided for payments available by draft at sight for coal destined for either of the three places named in the contract at c. i. f. prices. The document required "full set ocean bills of lading issued to order (blank indorsed) invoice in triplicate; insurance certificate, including war risk, must cover invoice plus 10 per cent. imaginary profits." When the money was paid by the defendant bank to Dexter & Carpenter, Inc., an insurance certificate executed by the brokers, invoice, and a certificate of inspection, with a set of bills of lading, were accepted by the defendant bank and transmitted to the Swedish Bank. In turn, the Swedish Bank transmitted these instruments to the plaintiff by letter dated June 29, 1920, and described the insurance certificates as "policies." Acknowledgment thereof was made by a letter to the Swedish Bank, dated July 5, 1920. The broker's certificate, dated May 11, 1920, certified that the cargo had been insured in London. A letter of credit thus issued was a distinct contract from the underlying contract of sale by Dexter & Carpenter, Inc., to Beijer and the plaintiff. Amer. Steel Co. v. Irving Natl. (C. C. A.) 266 F. 41; Bank of Plant City v. Canal-Commercial Trust Co. Bank (C. C. A.) 270 F. 477; Internatl. Banking Corp. v. Irving Nat. Bank (D. C.) 274 F. 122.

The contract between the plaintiff and Beijer was for the sale and delivery of the coal, to be paid for as soon as Beijer notified the plaintiff that a steamer was ready and the value of the cargo under the terms of the contract became known. The plaintiff advanced the money to the Swedish Bank as required for the payment of the coal, and the advance was made on an account called "Beijer's American Coal Account." The defendant bank had no notice of plaintiff's connection with the purchase of the coal, and it contracted only with the Swedish Bank; its letter of credit advising Dexter & Carpenter,

Inc., that it was opened on account of G. & L. Beijer, Stockholm. Beijer negotiated with the Swedish Bank to open credit through the defendant bank, but the money was paid by the plaintiff. The relation between the Swedish Bank and the defendant bank arose by instructions to open a special letter of credit and the carrying out of this instruction. The defendant bank was paid a commission. There was no expressed contract between the plaintiff and defendant bank. The bank's contract was to open a letter of credit for another bank, which made it its correspondent bank, and it was from it alone that it took instructions. The defendant bank never communicated with the customer of the foreign bank, who was the buyer of the goods, and indeed did not investigate the credit of such foreign buyer. It looked to the correspondent foreign bank for reimbursement. The plaintiff, under these circumstances, could not recover upon any contract made by the correspondent bank, acting, apparently, for and in the name of the buyer of the coal. Matter of Bateman, 145 N. Y. 623, 40 N. E. 10. The foreign principal, so far as the bank is concerned, was Beijer. Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp., 216 App. Div. 496, 215 N. Y. S. 525. Moreover, if the Swedish Bank or Beijer did not dispose of the money for the purpose of paying the coal purchased in the manner directed by the plaintiff, they alone are accountable therefor. No action for money had and received would lie against the bank. Green v. Wilbraham (C. C.) 190 F. 274; Sergeant v. Stryker, 16 N. J. Law, 464. The judgment was properly entered against the plaintiff in favor of the defendant bank.

[2] Plaintiff rests its claim to recover against Dexter & Carpenter, Inc., also upon the theory of money had and received. It is that, with full knowledge of their failure to deliver the document, they received the money from the defendant bank, which was plaintiff's agent to pay it over, and that there was no consideration paid by Dexter & Carpenter, Inc., because the coal was never delivered. The claim is not based upon the theory of rescission of contract. If it were, then the right to recover money paid under the agreement would be based on the failure of consideration or the default of the other party, and it is always subject to the rule that the former state of things must be restored. The rescission of the contract upon the ground of mistake or fraud after discovery requires that the party desiring to rescind must, upon discovery, announce the purpose to rescind it;

if he continues to treat the property as his own, the right of rescission is gone and the party liable is held bound by his contract. Shappirio v. Goldberg, 192 U. S. 232, 24 S. Ct. 259, 48 L. Ed. 419; Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798; Watchorn v. Roxana Co. (C. C. A.) 5 F.(2d) 636; Bradley Lumber Co. v. Bradley County Bank (C. C. A.) 206 F. 41.

The failure of consideration and the improper reception of the money by Dexter & Carpenter, Inc., is upon the theory that the payment of the money by the bank to Dexter & Carpenter, Inc., was to be made only upon delivery of an insurance policy covering the risk of the cargo of coal. The defendant offered proof to establish a custom making use of broker's certificates in consummating transactions like the one here in question, instead of delivering policies. This insurance was placed in London and was arranged by cable. There would have been delay in transmission and thus delay in sending forth the cargoes, if it was necessary to await the arrival of the insurance policies. The defendant offered proof of the custom. We need not, however, consider whether such a custom was proved, or could modify the contract, for there is another ground which precludes recovery. Merchants' Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008; Pan-American Bank v. Nat. City Bank, 6 F.(2d) 762; Nicoll v. Pittsvein Coal Co. (C. C. A.) 269 F. 968; Victor v. Nat. City Bank, 200 App. Div. 557, 193 N. Y. S. 868.

Beijer directed Dexter & Carpenter, Inc., to place the insurance abroad and upon doing so, Beijer was notified. One method of placing the insurance was by the use of broker's certificates, which were tendered in the United States. The letter of credit required that an "insurance certificate" be issued. A certificate of brokers was accepted in full compliance, and this was forwarded with the other documents, and actually received by the railroad company on June 5th. On that day the railroad company in writing accepted the documents unconditionally and gave notice of affirmation of the transaction to the bank. It may not now change its position and say that it has not received proper documents. Rand v. Morse (C. C. A.) 289 F. 339; Shipton v. Western, 10 Lloyd's L. L. Rep. 762; Dwane v. Weil, 199 App. Div. 719, 192 N. Y. S. 393, affirmed 235 N. Y. 527, 139 N. E. 720. This acceptance of the certificate by the railroad, under the facts here disclosed, bars the maintenance of the present action,

based upon the theory of money had and received.

In the original complaint filed, the plaintiff alleged that the contract was made for it by Beijer. The defendant Dexter & Carpenter, Inc., asserts that Beijer was the plaintiff's agent by proper authorization, and that it in all respects ratified the making and carrying out of the terms of the contract. The cablegrams exchanged for the preliminary negotiations leading up to the making of the formal contract between Beijer and Dexter & Carpenter, Inc., indicate that the coal was for the plaintiff's use, and it paid for the coal as delivered. The subsequent correspondence treated the contract as if the railroad company was the real party in interest. The defendant Dexter & Carpenter, Inc., has interposed a counterclaim for $1,250,000, claiming that the contract for the sale of the 150,000 tons was breached on September 17, 1920, by formal cancellation by the plaintiff. It seeks to review the judgment rendered on this counterclaim, contending that errors were made by the trial judge in his instructions as to the terms of the contract, in his charge to the jury.

An embargo was placed upon shipments of coal, which was not lifted until May 1, 1920. However, a permit was obtained at the end of March, which allowed Dexter & Carpenter, Inc., to ship one cargo in that month. As soon as the embargo was officially lifted on May 1st, the cargo on the ship Alderman was loaded, and subsequent shipments were made in May and June. In June, 1920, a strike occurred on the railroads carrying coal from the mines to tidewater, which resulted in the issuance of an order by the Interstate Commerce Commission, which became effective on June 24th and directed railroads to carry coal to tidewater only when a permit could be obtained from government officials. The effect of this order was to shut down all coal exports, except when such a permit could be obtained. This information was cabled to Beijer, and it acknowledged receipt thereof in a letter dated June 28th. By correspondence, it was arranged between the parties that bituminous coal could be and was shipped for the railroad's use. At the same time, Dexter & Carpenter, Inc., wrote on July 31st:

"We wish to acknowledge receipt of your cable No. 42 of the 29th, in which you authorize us to charter a steamer for Gothenburg for the State Railway on the basis of $32.90 per gross ton delivered alongside. This to apply against our contract with them and the additional price to cover the cost of bringing the coal to New York, lighterage, loading, etc."

On August 13th, Beijer cabled:

"State railways decline further shipments over New York also decline any further run mine cargoes meantime owing overstocks all ports."

[3] On August 16th, they again cabled that they were overstocked. On September 17, 1920, the railroad service order which forbade the shipment was withdrawn, and made it possible to again ship the coal under the contract. This information was cabled to Beijer, who cabled that the railroad company considered the contract canceled and directed that no further shipment be made. From the pleadings referred to, the correspondence and conduct of the parties, we are satisfied that the defendant Dexter & Carpenter, Inc., could maintain this counterclaim for breach of the contract. Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183; Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; Royal Bank v. Universal Export Corp. (C. C. A.) 10 F.(2d) 669. Assuming that the railroad company did not intend to assume liability, they in fact did intend to do the acts which constitute an affirmance of the contract and it is not necessary that there shall be actual willingness to assume the consequences of that affirmance.

[4] In his charge to the jury, the district judge instructed them that, in any event, the contract was at an end on October 8, 1920. Under the terms of the contract, in the event of an embargo on export coal, shipments were to begin 30 days after the raising of the government embargo and were to be completed within 6 months. The defendant was excused from failure to deliver the 30,000 tons in each month during the embargo, and cannot be held liable for these monthly deliveries. Delivery being impossible during these months, it was not a matter of mere postponement or suspension of delivery during the period that performance was prevented by governmental interference. The contract in its entirety was made subject to a force majeure clause, and this did not permit the defendant to deliver the balance due under the contract in the period of one or two months. They were restricted by the terms of the contract to deliver 30,000 tons per month. Edw. Maurer Co. v. Tubeless Tire Co. (D. C.) 272 F. 990, affirmed (C. C. A.) 285 F. 713. They did, however, have 6 months from May 1st, which would be November 1st, in which to make deliveries. Under the contract, they

could make deliveries from September 17th, when they gave notice they were prepared to continue deliveries. They had the balance of September and the month of October, in which period they were permitted, under the terms of the contract, to make delivery of 60,000 tons of coal. Corona Coal Co. v. Hyams (C. C. A.) 9 F.(2d) 361; Jackson Phosphate Co. v. Caraleigh Fertilizer Wks. (C. C. A.) 213 F. 743. About 50,000 tons of the coal had been delivered under the contract. If there was a breach of the contract, the defendant could recover such loss as it sustained by reason of the failure to accept the September and October deliveries. This error of the charge was substantial.

[5] The court, upon request of the defendant, declined to charge that the coal to be shipped was only coal of the grade specified in the contract, ¾-inch screened Fairmont coal, and said:

"I decline to charge it, in view of what the practical construction of this contract was at that time. If you had mine run coal, which the other side were asking for, and which were shipping (sic) and applying on this contract, I think you were required to ship that coal."

But the contract is plain as to the quality of coal to be shipped. No contract of the parties changed that. When the bituminous coal was shipped, it was done for an emergency and by permission granted by cable. Nothing, however, in the cable changed the contract from screened coal into a contract for run of mine. This instruction was prejudicial. These errors in the court's instructions require us to reverse the judgment entered on the counterclaim. Norton v. Standard Slag Co. (C. C. A.) 13 F.(2d) 622; Brainard v. N. Y. Central, 242 N. Y. 125, 151 N. E. 152, 45 A. L. R. 751.

The judgment is affirmed on the plaintiff's writ of error, and is reversed on the defendant's writ of error.