TERIJON WEITLING and Others, Appellants, *v.* JOHN S. SORENSON, as Surviving Partner of the Firm of CROSSMAN & SIELCKEN, in Liquidation, and Another, Respondents.

First Department, June 8, 1934.

*W. Randolph Montgomery* of counsel [*Julian A. Gregory* and *Milo O. Bennett* with him on the brief; *Gregory, Stewart & Montgomery*, attorneys], for the appellants.

*I. Gainsburg* of counsel [*H. B. Tibbets* and *Jay E. Whiting* with him on the brief; *Avery & Whiting*, attorneys for Irving Trust Company; *Tibbets, Lewis & Rand*, attorneys for John S. Sorenson], for the respondents.

UNTERMYER, J.   Separate actions were instituted to recover from the defendant Sorenson as sole surviving partner of the firm of Crossman & Sielcken, in liquidation, a balance of $72,761.89, alleged to be due to each of the plaintiffs under a written contract whereby the plaintiffs were employed as export managers.   Thereafter the defendant Irving Trust Company, as executor of the estate of Herman Sielcken, who had died on October 8, 1917, was impleaded as a defendant and was served with a supplemental summons and complaint.   By an order entered October 15, 1931, the four actions were consolidated and eventually resulted in a judgment in favor of the defendants, from which the plaintiffs appealed.   Only the appeal of the plaintiff Weitling is now before us, the claims of the other plaintiffs, as we are informed, having been settled since service of notice of appeal.   However, since the

four actions were tried as one, it will be convenient to refer to the evidence offered at the trial on behalf of all the plaintiffs.

The complaints and supplemental complaints allege an agreement made in 1914 between the plaintiffs and the firm of Crossman & Sielcken to the effect that each of the plaintiffs, as compensation for services as export manager, should receive ten per cent of the annual profits of the firm in its export business, as and when received by the firm. It is alleged that in the year 1915 profits were earned in the export business of the firm, of which $380,761.54, with interest thereon, making a total of $727,618.93 came into the possession of the firm on April 5, 1930. It is to recover ten per cent of such profits by each of the plaintiffs that these actions were brought.

The answer of the defendant Sorenson alleged as an affirmative defense that on or about December 22, 1917, each of the plaintiffs for a valuable consideration by an instrument in writing and under seal had released the firm of Crossman & Sielcken, its successors and assigns, and the members thereof from the claims set forth in the complaints. The answer of the defendant Irving Trust Company to the supplemental complaint contained similar allegations and further alleged that the plaintiffs had "assigned to Columbia Trust Company, as executor of the estate of Hermann Sielcken, any and all amounts that might become due" on account of the profits to which this action relates. The plaintiffs replied to the affirmative defenses contained in the answers by denying that the claim alleged in the complaint had been released.

Thereafter on application of the defendants an order was made directing "that the issues in this action tendered by the affirmative defense of general release * * * and the joint reply of the plaintiffs herein to such affirmative defense be tried prior to any trial of the other issues in this action." At the opening of the trial the defendants, pursuant to notice previously served, were permitted to amend their answers by alleging as a second affirmative defense that on or about December 22, 1917, the claims set forth in each of the complaints had been released by instruments in writing, not alleged, however, to be under seal. The trial court ruled that the new issues tendered by these amendments would be deemed to be denied or avoided in accordance with the provisions of section 243 of the Civil Practice Act.

Most of the evidence offered by the plaintiffs at the trial was excluded. That evidence, principally documentary, tended to show that on July 10, 1915, they had entered into a written contract with the partnership of Crossman & Sielcken, retroactive to January 1, 1914, whereby they were employed as managers of the export

department, for which each was to receive a ten per cent interest in the annual profits of the firm's export business; that in the year 1915 export profits of $363,826.40 had accumulated but that in that year the firm had made shipments, described in the record as the "Copenhagen cargoes," which were confiscated by the British naval authorities as destined for a German port, with a loss to the firm of $457,707.54. This loss was charged against the export profits on the 1915 balance sheet, resulting in an apparent net loss for that year. The value of the "Copenhagen cargoes," with interest, totaling the sum of $727,618.93, was, however, recovered and came into the possession of the firm on April 7, 1930. The plaintiffs thereupon made claim for their share of the restored profits of $363,826.40 plus ten per cent of the profits on the "Copenhagen cargoes," with interest.

During all this time Kirkpatrick was a British subject and it seems at first to have been thought that the claim against the British government resulting from the seizure of the "Copenhagen cargoes" would be more likely to succeed if prosecuted on behalf of the firm in his individual name. Kirkpatrick and Smith, however, severed their relations with the firm on June 9, 1916, Weitling and Budelman remaining. On January 19, 1916, each of the plaintiffs had received payment of $6,807.19 on account of profits for the year 1914 and had given a receipt therefor. On September 20, 1916, after Kirkpatrick and Smith were no longer connected with the firm, each received $10,000 on account of profits of 1915 and part of 1916. For these payments each plaintiff gave a sealed release dated September 20, 1916. These releases, although not pleaded in the answers of the defendants, were offered in evidence by the defendants and received without objection. The question of their validity and their effect upon the claims asserted in the complaints was, however, not considered nor litigated at the trial. No motions were made by the defendants based upon these releases nor were any issues relating thereto submitted to the jury as questions of fact. Indeed, under the order which stated the issue to be separately tried, it is doubtful whether the issues of fact and law arising on the 1916 releases could have been decided on this trial. In any event the case was tried and decided in the court below entirely on the releases of 1917 which were pleaded in the answers of the defendants, as amended, both as sealed and as unsealed instruments. We would, therefore, be justified in disregarding the releases of 1916 on this appeal, but since there must be a new trial it is proper to observe that we consider the release given by Weitling to be so ambiguous as to require the admission of parol evidence in explanation.

The four releases of 1916 differ in their terms. Those signed by Kirkpatrick and Smith, who had severed their connection with the partnership four months before, after releasing the firm from all claims and demands " to the day of the date of these presents," contain the following provisions: " except that, should any amounts be hereafter recovered by the said firm on account of goods shipped during the year 1915 and seized by the British naval authorities, and if, by reason of such recovery or recoveries, the export business of the said firm for the said year should, after deduction of all legal and other expenses incurred in connection with such recoveries, show a net profit, I shall be entitled to, and shall, receive my share of such net profit being 10 per cent (10%) thereof; and I further agree that should any amount be awarded to me, individually, on account of such seized goods by any Prize Court or otherwise, I will pay any and all such amounts forthwith to the said firm of Crossman & Sielcken, to be considered as a recovery by them, as hereinbefore provided." The releases executed by Weitling and Budelman, who remained in the service of the firm, released the firm from all claims and demands " to June 30, 1916," which " I ever had, now have or which I, my heirs, executors or administrators hereafter can, shall or may have." They also contain the following reservation: " except that should any amount be awarded to me, individually, by any Prize Court or otherwise, on account of goods shipped during the year 1915 and seized by the British Naval authorities, I will pay all such amounts forthwith to the said firm of Crossman & Sielcken, to be considered as a recovery by them."

The appellant Weitling contends that the releases of 1916 do not relinquish his interest in a subsequent recovery for the " Copenhagen cargoes," even though resulting from a seizure which had occurred previously (Mitchell v. Mitchell, 170 App. Div. 452; Farnham v. Farnham, 204 id. 573), and, in any event, that the releases are ambiguous. We think they are ambiguous and that it may fairly be maintained that it was the effect of these provisions to " except " the interest of Weitling and Budelman in the outstanding claim against the British government from the claims which were released. Otherwise the conjunction " and," rather than " except," would probably have been used. It may be that the parties intended by this language to provide that any recovery for the " Copenhagen cargoes " should be excepted from the operation of the releases, and, if recovered " individually " by any of the plaintiffs, that it should be paid to the firm for a distribution in which they would share. This is also suggested by the fact that it is expressly

provided in the releases executed by the two retired employees that they shall retain their interest in any subsequent award for the " Copenhagen cargoes." In the case of the two plaintiffs who remained with the firm, this may have been regarded as unnecessary because it was considered that they would receive their interest in any award recovered thereafter, under their subsisting contracts of employment with the firm. The award, whenever received, was " to be considered as a recovery by " the firm, thereby increasing the export profits of the firm to which the interest of Weitling and Budelman would attach. Read, therefore, in the light of the situation of the parties at the time of the execution of these releases, they are readily susceptible of the construction that the plaintiffs retained an interest in any future award made on account of the loss incurred in 1915. It follows that even if the releases of 1916 had been pleaded by the defendants and had been litigated at the trial, it was error to exclude parol evidence of the intentions of the parties to these ambiguous instruments. (*Bank of Montreal* v. *Recknagel*, 109 N. Y. 482.)

For the same reasons the trial court should have received the evidence offered by the plaintiffs concerning the conduct of the parties with relation to the " Copenhagen cargoes " after the execution of the releases. (*Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1.) The plaintiffs offered to prove a course of conduct showing unqualified recognition by the firm of Crossman & Sielcken and by the defendants of the plaintiffs' interest, almost to the time of the payment of the award by the British government. They offered to prove the extent of their activities in the prosecution of the claim and that on July 1, 1920, they had contributed 5.768 per cent of the legal expenses incurred in prosecuting the claim upon the written statement of Crossman & Sielcken that " we calculate your interest in any recovery to be in the proportion of $30,239 to $524,259.21, or 5.768%." They offered to prove that in May, 1927, the plaintiffs were asked to join, and did join, in written instructions with respect to additional counsel to prosecute the claim; that in 1929 and 1930 the defendant Sorenson prepared figures indicating their interest in any recovery, and that on March 11, 1930, less than a month before payment of the award, there was submitted to them by the defendant Irving Trust Company an agreement providing for arbitration of any dispute that might arise in the distribution of the award. These circumstances, if received in evidence and given proper weight, might well convince a trial court that the equivocal language of the 1916 releases was not intended to deprive the plaintiffs of their interest in the proceeds of property, the value of which

had already been deducted in calculating the profits of previous years.

The trial court likewise erred in excluding evidence offered by the plaintiffs to establish that the releases of December 22, 1917, were given without consideration. These releases contain the following provision concerning the " Copenhagen cargoes:" " In consideration of receipt of the aforementioned payment, I hereby agree that, should any amount be awarded to me, individually, by any Prize Court or otherwise, on account of goods shipped during the year 1915 and seized by the British Naval authorities, I will pay all such amounts forthwith to the Columbia Trust Co., as executors of the estate of Hermann Sielcken, deceased."

These are the releases which the defendants pleaded in their answers both as sealed and unsealed instruments and on which they relied at the trial. Hermann Sielcken, one of the partners had died after the 1916 releases and before the execution of the 1917 releases. In the 1916 releases it was provided that any sum recovered was " to be considered as a recovery by " the firm. In the 1917 releases this is changed to provide that any individual recovery shall be paid " to the Columbia Trust Co., as executors of the estate of Hermann Sielcken, deceased." The plaintiffs testified, without contradiction, that the only releases delivered to the firm in 1917 were not sealed and they further attempted to prove by documentary and other evidence that the amount received upon the execution of the releases was the exact sum to which they were entitled under their contract of employment with the firm. All this proof was erroneously excluded by the trial court. The plaintiffs were entitled to overthrow the releases, if not under seal, by proof that they were given without consideration. (*Pitt* v. *Board of Education*, 216 N. Y. 304; *Purdy* v. *R., W. & O. R. R. Co.*, 125 id. 209; *Haviland* v. *Willets*, 141 id. 35; 53 C. J. 1204.) At the conclusion of the case the court directed a verdict for the defendants on the second affirmative defense, which alleged a release not under seal, and submitted to the jury only the question whether the 1917 releases were sealed instruments. On that single issue the jury returned a verdict in favor of the defendants, finding that the releases of 1917 were sealed.

It is true that if the jury was justified in finding that the releases of 1917 were sealed instruments, then the question of consideration would be immaterial. (*Stiebel* v. *Grosberg*, 202 N. Y. 266.) There is, however, no evidence to sustain this finding of the jury. The releases produced by the defendants were not sealed, and the recital that they are sealed instruments did not make them so. (*Empire Trust Co.* v. *Heinze*, 242 N. Y. 475.)

No witness testified to the delivery in 1917 of any releases under seal and the plaintiffs testified that the only releases delivered in that year were the unsealed releases produced by the defendants at the trial. The utmost that may be said is that, based upon the cross-examination of the plaintiffs, it might be claimed that the plaintiffs had retained the original copies of the sealed releases and had signed and delivered unsealed carbon copies. But the retention by the plaintiffs of sealed releases did not convert the unsealed releases which were delivered to the defendants into sealed instruments. (*Stiebel* v. *Grosberg, supra.*) There was, therefore, no evidence to sustain the allegation that releases under seal were delivered by the plaintiffs to the defendants in 1917.

The judgment and order as against the plaintiff Weitling should be reversed, the action severed, and a new trial ordered as to the plaintiff Weitling, with costs to the said appellant to abide the event.

FINCH, P. J., TOWNLEY and GLENNON, JJ., concur; MERRELL, J., dissents.

Judgment and order as against the plaintiff Terijon Weitling reversed, the action severed, and a new trial ordered as to said plaintiff, with costs to the said appellant to abide the event.